UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| AUGUSTA COUNTRY CLUB, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) |
| FIREMAN'S FUND INSURANCE COMPANY, | ) ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES Augusta Country Club, Inc. (hereinafter "ACC"), by and through undersigned counsel, and brings this Complaint for Damages against Fireman's Fund Insurance Company (hereinafter "FFIC") and shows this Honorable Court as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff ACC is a corporation formed in the State of Georgia with its principal office located at 655 Milledge Road, Augusta, Georgia 30904.

2. Defendant FFIC is a foreign insurance company existing under the laws of the State of California, licensed to do business in Georgia, with its principal place of business located at 225 West Washington Street, Suite 1800, Chicago, Illinois 60606.

3. Defendant FFIC may be served with process through its registered agent, CT Corporation System, located at 289 S Culver Street, Lawrenceville, Georgia 30046.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because ACC and FFIC are citizens of different states, as established in paragraphs 1 and 2 of this Complaint, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over FFIC because FFIC transacts business within this District and regularly engages in a persistent course of conduct and derives substantial revenue from this District and the State of Georgia. Moreover, the insurance policy at issue covers property located within this District and was executed within this District, and FFIC caused harm to ACC in this District through its failure to render payment in accordance with the policy coverage and limits.

6. Venue is proper in this District because a substantial part of the events or omissions giving rise to ACC's claims occurred in this District.

## FACTUAL BACKGROUND

7. On September 27, 2024, Hurricane Helene hit Augusta, Georgia, bringing significant rain and damaging winds, destroying much of the area. The hurricane caused widespread power outages, downed trees and power lines, and damage to roofs, vehicles, and other property. ACC sustained a significant loss during this storm, including extensive damage to its golf course, outdoor structures, and trees.

8. FFIC agreed that the hurricane caused significant damage to the structures, golf course, and grounds across the property.

9. FFIC issued a policy of insurance that provided coverage for Hurricane-Helene related losses, in the form attached hereto as Exhibit 1.

10. The Policy included separate coverage specifically for debris removal in the following categories:

    a. Preferred Club – Property Enhancement Endorsement (VCCCP2000B 03 18)

    b. Preferred Club – Tee to Green (VCCCP2004B 03 18)

    c. Preferred Club – Outdoor Structure and Fixtures (VCCCP2002B 03 18)

    d.   Property Enhancement Supplemental Schedule (VCCCPDS01B 03 18)

    e.   Business and Personal Property Coverage Form (CP 00 10 10 12)

11. Promptly following the hurricane, FFIC was notified of the loss incurred by ACC and permitted to investigate the loss.

12. ACC cooperated with the investigation of the claim and provided all of the information requested by FFIC. ACC has made a proper claim for all of the relief sought herein, and it has otherwise complied with all other terms and conditions of the policy.

13. FFIC has acknowledged receipt of the hurricane damage claim and coverage for the structures, fixtures, and property including the removal of trees and debris from covered outdoor structures and the repair or replacement of lost or damaged property.

14. FFIC has acknowledged available coverage under the policy for the removal of debris of covered property.

15. FFIC has acknowledged available coverage to remove debris of "other than covered property" from the described premises caused by a covered cause of loss that occurred during the policy period.

16. FFIC has acknowledged that Hurricane Helene was a covered cause of loss that occurred during the policy period.

17. The parties, however, disagreed on the interpretations of the phrase "debris of covered property" as such term is ambiguous within the context of the policy.

18. The purpose of the policy is to restore the insured's property to its usable condition after a covered event.

19. FFIC attempts to deny a portion of coverage by asserting that "debris of covered property" actually means "debris that originally was covered property prior to becoming debris."

20. FFIC argues that debris itself must have originally been a part of covered property rather than material lying "on" the described premises or covered property.

21. However, it would defeat the policy's very purpose if trees that fell on covered property are not themselves covered, even though they must be removed in order to repair or use the covered structures. That would be like having health insurance that will pay the medical doctor to sew up the wound, but not remove the knife.

22. Insurers inherently cover the removal of fallen trees or tree debris when they damage covered property, especially when removed is required to repair that covered property. Every insured would read the policy and believe that tree debris that falls onto and inhibits the use of covered property will be removed as a cost of the insurance claim and covered by the insurance policy.

23. While FFIC has agreed to pay the cost of repairing or replacing the lost or damaged property under the policy, it has refused to pay the cost of removing the fallen trees from the covered property, which is necessary in order to access, fix, and use the property. For example, it will pay to repair the golf cart path after the tree fell on it, but not pay to remove the tree itself from the path.

24. Debris of covered property should be interpreted to include debris on covered property that caused damage to the covered property and necessarily must be removed in order to use or repair the covered property.

25. Alternatively, if the cost to remove trees from the covered structures is not considered debris of covered property, then the tree removal from covered property should be considered part of the cost of repair of the covered property itself.

26. Part of the cost of repair is removing the fallen trees from the covered outdoor structures in order to access, fix, and use them. The cost to repair the outdoor structures (like cart paths) necessarily includes the cost to remove the trees that fell on those structures.

27. The policy also provides coverage in the amount of $250,000.00 for debris removal "other than covered property." FFIC has acknowledged that the trees on the ACC premises that are located outside of the golf course playing surface area are not considered covered property; therefore debris originating from those trees would inherently be considered debris that is "other than covered property."

28. Over $1 million in tree removal expense is reasonably attributed to trees outside of the playing surfaces and not on the outdoor structures, which should fall within FFIC's definition of debris that is "other than covered property."

29. ACC hired and retained tree removal services from numerous companies in the aftermath of the hurricane, and ACC has provided all invoices and explanations of charges to FFIC.

30. ACC has paid millions of dollars to remove tree debris from its property, but FFIC has only provided claim payments for a fraction of that work.

31. FFIC has refused to pay any portion of the insurance coverage applicable to debris that is "other than covered property."

32. ACC made formal demands to FFIC under O.C.G.A. § 33-4-6 on August 8, 2025, and on October 10, 2025 in an effort to settle their claims from Hurricane Helene.

33. ACC's most recent demand on October 10, 2025 was for a total of $487,824.00 with $237,824.00 as the cost to remove the trees that were required as part of and in order to perform repairs on the outdoor structures and fixtures, and with far greater than $250,000.00 as

the cost of debris removal from the premises, which debris would be considered "other than covered property."

34. FFIC failed to respond to ACC's October 10, 2025 demand, thus necessitating the filing of this lawsuit.

35. Under O.C.G.A. § 33-4-6, "in the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer."

36. FFIC had an affirmative duty to fairly and promptly adjust ACC's claim.

37. FFIC has breached such duty and should be liable under O.C.G.A. § 33-4-6.

## COUNT I- BREACH OF INSURANCE CONTRACT

38. ACC incorporates here as if fully restated the allegations contained in the foregoing paragraphs of this Complaint.

39. Under the policy, coverage is available for Hurricane Helene related losses.

40. ACC's property was damaged by the hurricane, including damage to the buildings, structures, outdoor structures, golf course, and cart paths, among others.

41. FFIC seeks to interpret its policy provisions in such a way as to deny portions of covered losses to ACC. Differing interpretations of a phrase demonstrate that the term is ambiguous. Under Georgia law, ambiguous insurance provisions are to be construed in favor of the insured and against the insurer as the drafter of the policy.

42. Under the policy language, the foregoing damage is fully covered and not subject to any policy limit or exclusion.

43. FFIC is liable for all damage and cost to repair that damage attributable to the hurricane up to the policy limits.

44. FFIC's refusal to pay for damages covered by its policy of insurance is in bad faith.

45. FFIC has acted in bad faith, it has been stubbornly litigious, and it has caused ACC unnecessary trouble and expense.

46. ACC has satisfied its contractual obligations and all conditions precedent to the adjustment of its insurance policy claim against FFIC.

47. While FFIC has made some payments for some portions of the claim under its policy, ACC is entitled to additional payments as set forth in its October 10, 2025 demand for a total of $487,824.00, with $237,824.00 being the cost to remove the trees to perform repairs on the outdoor structures and fixtures (debris of covered property) and with $250,000.00 as the limit applicable as the cost of debris removal "other than covered property."

## COUNT II – BAD FAITH FAILURE TO SETTLE A CLAIM BY FFIC

48. ACC incorporates here as if fully restated the allegations contained in the foregoing paragraphs of this Complaint.

49. ACC submitted all correspondence, documents, information, proof of loss and other material requested by FFIC and the policy to be submitted in order to obtain coverage under the policy.

50. Per the terms of the policy, ACC's claim for damage to its outdoor structures and fixtures, debris of covered property, and debris removal other than covered property is a covered loss.

51. ACC made timely and repeated demands of FFIC for payment of the damage to its property under the policy, including formal written demands under O.C.G.A. § 33-4-6 on August 8, 2025, and on October 10, 2025, said demand letters are attached as Exhibit 2 hereto.

52. In response to demands made by ACC, FFIC has accepted coverage, but seeks to interpret phrases of the policy in a way that limits coverage to certain areas.

53. Additionally, FFIC has accepted coverage for debris removal but continues to make excuses as to why it cannot pay based upon the circumstances surrounding this claim and the removal of the trees at the property.

54. FFIC has not provided any evidence to support a legitimate reason to deny portions of ACC's claim.

55. More than sixty days have elapsed since the demands have been made by ACC, and FFIC has refused to pay the remainder of the claim.

56. FFIC was required to pay any covered loss within thirty days from the date of ACC's submission of the proof of loss.

57. To date, FFIC has refused to pay ACC for the damages to its property in violation of the terms of the policy.

58. FFIC was notified by ACC of the damage immediately after the hurricane. ACC cooperated with FFIC's investigative process and properly submitted all correspondence, documents, and proof of loss as required under the policy.

59. FFIC has no good cause for resisting and delaying payment to ACC for the damage to its property.

60. Based upon FFIC's bad faith refusal to provide payment, ACC is entitled to the following:

    a. The amount of the loss, amounting to at least $487,824.00;

    b. Interest thereon at the legal rate;

    c. Statutory damages of at least 50% of the liability of FFIC under the policy; and

    d. ACC's attorney fees.

WHEREFORE, the Augusta Country Club prays that the Court enter a judgment in favor of ACC in the amount of $487,824.00, plus interest thereon at the statutory prejudgment rate, that the court award statutory damages in the amount of 50% of the unpaid claim, that ACC recover its attorney fees and costs incurred in prosecuting all claims in this lawsuit, and for such other and further relief as the Court deems just and proper.

This 2nd day of March, 2026.

                                       /s/ *Christopher A. Cosper*
                                       Christopher A. Cosper
                                       Georgia Bar No. 142020
                                       *Attorney for Plaintiff*
                                       *Augusta Country Club, Inc.*

Of Counsel:
HULL BARRETT, P.C.
Post Office Box 1564
Augusta, Georgia 30901
(o) 706/722-4481 | (f) 706.722.9779
CCosper@HullBarrett.com